UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARYL M. KHAN,

                Plaintiff,

      -against-

JOHN ROGERS; Court Officer GELORMINO, Badge # 345; JOHN DOE # 1, a Lieutenant Court Officer with the New York State Unified Court System; and JOHN DOES # 2-3, Court Officers with the New York State Unified Court System, in their individual capacities,

                Defendants.

**COMPLAINT AND JURY TRIAL DEMAND**

        Plaintiff Daryl M. Khan, by and through his attorneys, Emery Celli Brinckerhoff & Abady LLP, for his Complaint alleges as follows:

## INTRODUCTION

        1.     On Friday, June 24, 2016, Plaintiff Daryl M. Khan, a working reporter, was falsely arrested, handcuffed, and detained for two hours—all for simply doing his job.

        2.     Plaintiff, an accomplished Brooklyn journalist on assignment for the Center for Sustainable Justice, was arrested while taking a 28-second cell-phone video while lawfully present in the hallway of a New York courthouse.  Although he was charged with disorderly conduct, at no time did Plaintiff disturb a lawful assembly or engage in any conduct giving rise to probable cause for his arrest.  Nor did Plaintiff ever recklessly create a risk of public inconvenience, annoyance, or alarm.

1

3. Nevertheless, Defendants arrested Plaintiff, handcuffed him, held him in a courthouse cell for two hours, and threatened him with felony charges, subsequently issuing him a citation for disorderly conduct.

4. The charge was dismissed on October 14, 2016.

5. This civil rights action seeks damages for Defendants' violations of Mr. Khan's rights under 42 U.S.C. § 1983 and the United States Constitution.

## THE PARTIES

6. Plaintiff Daryl M. Khan is a citizen of the United States and at all times relevant hereto was a resident of Brooklyn, New York.

7. Defendant John Rogers, Defendant Gelormino, Defendant Lieutenant John Doe # 1 (the "Defendant Lieutenant" or the "Lieutenant"), and Defendants John Does # 2-3 (the "Defendant Officers" or the "Officers"), at all times relevant to this complaint, were Court Officers employed by New York State. In this role, Defendants were duly appointed and acting officers, servants, employees and/or agents of the State of New York and/or of the New York State Office of Court Administration, an agency of the State of New York. At all relevant times, they were acting under color of state law. They are sued in their individual capacities.

## JURISDICTION AND VENUE

8. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

9. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

10. The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

**JURY DEMAND**

11.     Plaintiff demands trial by jury in this action.

**FACTUAL ALLEGATIONS**

12.     Plaintiff Daryl M. Khan, who is forty-two years old, is an experienced journalist and teacher.  A former reporter for the *New York Times* and *Newsday*, among other outlets, Plaintiff is the New York Bureau Chief for the Center for Sustainable Justice at Kennesaw State University in Georgia and an adjunct professor of journalism at the City University of New York's Graduate School of Journalism.  Although primarily a writer, Plaintiff frequently takes pictures and records videos for his stories, as do many journalists.

13.     On Friday, June 24, 2016, Plaintiff was on assignment for the Juvenile Justice Information Exchange (JJIE), a publication of the Center for Sustainable Justice, tasked with reporting on the sentencing of Taylonn Murphy, Jr., a young man convicted of murder.  The sentencing hearing was the most recent chapter in a saga Plaintiff had been covering for more than two years, which stemmed from a longstanding feud between rival gangs known to reside in Harlem housing projects.

14.     In order to watch the hearing, Plaintiff went to the New York Criminal Court, part 93, located at 100 Centre Street, New York, New York.  He was accompanied by interns from his journalism class, and a friend of one of the interns.

15.     While outside on the steps of the courthouse, Mr. Khan conducted an interview for his story with Taylonn Murphy, Sr., the father of defendant Taylonn Murphy, Jr. Mr. Khan intended to interview Mr. Murphy, Sr., once the sentence had been pronounced and after the hearing was over.

16.     Plaintiff went through court security once inside the courthouse and was

permitted to keep his cell phone.

17. Prior to the hearing, more than a dozen journalists and photographers were present in the hallway outside of part 93, including employees of the *New York Post*, the *New York Times*, and the *New York Daily News*. A camera crew from ABC's Nightline was shooting video.

18. By order of the trial court, more than the usual number of court officers were present both inside the courtroom and outside, in the hallway.

19. Just before the hearing began, a court officer informed those in the hallway that still photography, but not video, was to be permitted *inside* the courtroom. The officer did not state that video was prohibited *outside* of the courtroom, where Plaintiff stood. Nor did he mention any rules about video or photography that were applicable to the hallway.

20. Various journalists had been shooting video in the hallway for approximately thirty minutes prior to the hearing. Upon information and belief, none of these other journalists were ever asked to stop by court officers, much less arrested or detained for their conduct.

21. Following the officer's announcement, those with NYPD press credentials and family members of the defendant and victim were admitted to the courtroom. Plaintiff was not admitted to the courtroom because he did not have NYPD press credentials.

22. Plaintiff and other journalists stayed in the hallway. Plaintiff took notes and interviewed others who remained outside of the courtroom.

23. Shortly thereafter, a court officer exited the courtroom and announced, "The defendant's family is coming out." Expecting to see Mr. Murphy, Sr., whom he had interviewed outside of the courthouse and hoped to speak with again, Plaintiff took out his cell

4

phone and began to take a video recording of the courtroom door while standing against a wall in the hallway, several feet from the door. When the courtroom doors opened, eight or nine court officers came out, along with a visibly pregnant woman who was crying.

24. A female Sergeant noticed Plaintiff shooting his video and told Plaintiff that he should be ashamed of himself. Another court officer asked, "Is he shooting video?" A third responded, "Yes, he is." Two male court officers, hands on their service weapons, approached Plaintiff and asked for his name. Mr. Khan politely identified himself, produced his business card, and explained that he was covering the sentencing hearing for an ongoing story. That same officer asked Plaintiff for his press credentials, which Plaintiff explained he did not have.

25. The two officers—both taller than Plaintiff—then grabbed Mr. Khan by the arms and forcibly took him to the nearby Captain's office, where the same female Sergeant was waiting. Mr. Khan was held in the Captain's office, and was not free to leave. He was given no information about why he was being questioned and detained.

26. Eventually, the Defendant Lieutenant arrived and summoned Mr. Khan into the hallway. The Defendant Officers flanked Plaintiff. The Lieutenant told Plaintiff that he had broken the law by taking a video in the courthouse hallway, and directed Plaintiff to show him the video. The Lieutenant implied that he would let Plaintiff go if he acquiesced.

27. No such thing occurred. Hoping to meet his story deadline and believing he would be released if he complied, Plaintiff showed the Lieutenant the 28-second video he had taken. But rather than allow Plaintiff to leave, the Lieutenant immediately ordered Plaintiff to turn around and instructed the Defendants Officers to handcuff Plaintiff and take him away.

28. The Officers quickly yanked Mr. Khan's arms behind his back and

handcuffed him.  They took him to Room 1307 on the 13th floor and put him in a cell.  One officer patted Plaintiff down while the other watched, his hand on his gun.  The Officers unlocked Plaintiff's handcuffs and instructed him to take off his shoes and socks and turn them inside out.  They confiscated Plaintiff's notepad, pens, and cell phone, then left Plaintiff alone in the cell.  The Officers repeatedly refused to give Plaintiff their names or badge numbers.

29. At no time was Plaintiff informed he was under arrest or read his legal rights.  At no time was he told when he would be released.

30. After about forty-five minutes, Defendant Gelormino approached Plaintiff's cell and told Plaintiff he could go home if he deleted the video from his cell phone.

31. But this promise was quickly retracted when the Lieutenant arrived.  Pulling Gelormino away from Mr. Khan's cell, the Lieutenant chided him, saying words to the effect of: "You can't say that.  If we say he can leave for destroying the video, then he can come back later and say we held him wrongfully."  Turning back to Plaintiff, the Lieutenant said that Plaintiff was "already getting" a citation for disorderly conduct.  If Plaintiff did not delete the video, the Lieutenant threatened, he would be held in contempt of court, detained for the entire weekend, and charged with a felony.  Fearful of remaining in the cell and of being saddled with further meritless charges, Plaintiff complied.

32. By then, Mr. Khan had been held, incommunicado, for more than two hours.

33. Plaintiff was eventually issued a citation for disorderly conduct pursuant to N.Y. Penal Law § 240.20(4), signed by Defendant Rogers, and released.  Plaintiff appeared at court on the date specified in the citation, at which time he was arraigned.  He was compelled to return to court at least one more time until the charge was terminated in his favor when it was

dismissed on motion.

34. This action has been commenced within one year and ninety days after the charges against Plaintiff were dismissed.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – False Arrest & False Imprisonment

35. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

36. The Defendants wrongfully and illegally arrested Plaintiff and/or failed to intervene to prevent Plaintiff's wrongful arrest, and falsely charged Plaintiff with disorderly conduct.

37. The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

38. At all relevant times, the Defendants acted forcibly in apprehending and arresting Plaintiff.

39. Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, and falsely charged.

40. At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

41. All this occurred without any fault or provocation on the part of Plaintiff.

42. The Defendants acted under pretense and color of state law. Said acts by the Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific

intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendment to the United States Constitution.

43.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983 – Malicious Prosecution

44.   Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

45.   The Defendants maliciously and without justification commenced criminal proceedings against Plaintiff.

46.   The Defendants charged Plaintiff with these charges falsely, maliciously, in bad faith, and without probable cause.

47.   After proceedings in criminal court in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor.

48.   The Defendants acted under pretense and color of state law.  Said acts by the Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendment to the United States Constitution.

49.   As a direct result and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

    a.   Compensatory damages in an amount to be determined at trial;

b. Punitive damages in an amount to be determined at trial;

c. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

d. Injunctive relief; and

e. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 19, 2017

                                                    EMERY CELLI BRINCKERHOFF
                                                    & ABADY LLP

By: /s/ Andrew G. Celli, Jr.
Andrew G. Celli, Jr.
Emma L. Freeman
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
*Attorneys for Plaintiff*